[Civ. No. 2695.   Fourth Dist.   Apr. 21, 1942.]

FRED SIEMON et al., Respondents, v. WILLIAM E. LYON, Appellant.

Wm. G. Condron for Appellant.

Alfred Siemon and Bennett Siemon for Respondents.

SCHOTTKY, J. pro tem.—This is an appeal from a judgment quieting the title of respondents against appellant as to rights claimed by appellant under an oil and gas lease.

The complaint alleged in substance that appellant, as lessee, was required to commence the drilling of a second well on the leased land within three months following the completion of the first well; that the lease further provided that in the event any of the conditions of said lease were violated and lessee should fail to remedy same within thirty days after written notice so to do, then, at the option of the lessor, the lease should forthwith terminate as to all of said land except ten acres surrounding such producing well; that appellant lessee violated the terms of said lease in failing to commence a second well upon said premises as required by said lease within three months after completion of the first well; and that the required thirty-day notice was given.

The answer denied any breach and alleged that the first well was not yet completed but was still being worked on in an attempt to place it on steady production.

The covenants of the lease as to the drilling of the second well are expressed in paragraphs 7 and 8 of the lease as follows:

"7. If the Lessee shall elect to drill on said land as aforesaid, and oil or gas shall not be obtained in paying quantities in first well drilled, the Lessee shall, within three (3) months after the completion or abandonment of the first well, commence on said land drilling operations for a second well, and shall prosecute the same with reasonable diligence until oil or gas is found in paying quantities, or until the well is drilled to a depth at which further drilling would, in the judgment of the Lessee, be unprofitable; and the Lessee shall in like manner continue its operations until oil or gas in paying quantities is found, but subject always to the terms and conditions hereof and with the rights and privileges to the Lessee herein given.

"8. If oil or gas is found in paying quantities in any well so drilled by the Lessee on said land, the Lessee, subject to the provisions hereof and to the suspension privileges hereinafter set forth, shall continue to drill additional wells on said land as rapidly as one string of tools working with reasonable diligence can complete the same, until there shall have been completed on said land as many wells as shall equal the total acreage then held under this lease divided by ten; whereupon the Lessee shall hold all of the land free of further drilling obligations; provided, that the Lessee may defer the commencement of drilling operations for the second or any subsequent well

for a period not to exceed three (3) months from the date of completion of the well last preceding it.''

It was stipulated by counsel in open court that there was no issue in the case except the fact of whether the Metro No. 2 well had been completed, and that respondents were entitled to judgment in the event that it was found that said well had been completed.

The trial court found in accordance with the allegations of the complaint and appellant contends that the judgment should be reversed upon the ground that the evidence does not support the finding that said well was completed.

There is little dispute as to the facts but the parties are in sharp disagreement as to what constitutes a completed well.

The evidence shows that the well in question was cemented about September 18, 1939; that drilling thereon ceased about September 3, 1939; that pumping equipment was installed and actual pumping commenced in October, 1939; and that the well actually produced over 500 barrels of oil in each of the months of November, December and January, and over 450 barrels in the month of March, 1940, and a small quantity in August, 1940. Two witnesses called by appellant testified that the well produced for a short time and then made 50 to 75 per cent mud; that it would produce for six or seven days at a time and then fill up with mud and sand, and that they were, at the time of the commencement of the action, still working on the well and pump trying to get it to produce more oil; and that in their opinion the well was not completed.

Section 3217 of the Public Resources Code, which is based upon a statute enacted in 1915 (Stats. 1915, chap. 718, p. 1404), provides:

''A well is completed, for the purposes of this chapter, thirty days after it has commenced to produce oil, water, or gas, unless drilling operations are resumed before the end of the thirty-day period.''

■ It seems clear to us that the trial court was fully justified in finding that the well was completed. The drilling thereof was completed, the pumping equipment was installed and production commenced, and drilling operations on said well were never resumed. It is true that difficulties developed after production commenced and that it was necessary to clean the pump and the well, and it is likewise true that the well did not continue to produce in paying quantities. But there is nothing in the lease itself, or in the law, which requires that

for a well to be a completed well, it must be a well that produces in paying quantities. ██ It is a matter of common knowledge that some oil wells are brought in which never produce in paying quantities. The plain terms of the lease here involved required that appellant commence the drilling of a second well within three months after the first well was completed, and the appellant having failed to do so, and the required thirty-day notice having been given, the court below properly concluded that appellant's rights under the lease were terminated.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.